**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 17-Civ-60871-TORRES

B.T., a minor, by and through his natural parent
and guardian, CHRIS THOMPSON,

       Plaintiff,

v.

TARGET CORPORATION,

       Defendant.

_____/

## ORDER ON PLAINTIFF'S MOTION FOR REMAND AND FEES

This matter is before the Court on B.T.'s ("Plaintiff") motion to remand this case to Florida state court and for attorney's fees pursuant to 28 U.S.C. 1447(c) and Fed. R. Civ. 60(b)(4). [D.E. 35]. Target Corporation ("Defendant" or "Target") responded to Plaintiff's motion on August 20, 2020 [D.E. 38] to which Plaintiff replied on September 15, 2020. [D.E. 46]. Therefore, Plaintiff's motion is now ripe for disposition. After careful consideration of the motion, response, reply, relevant authority, and for the reasons discussed below, Plaintiff's motion is **DENIED**.

1

## I.   BACKGROUND

On March 24, 2017, Plaintiff filed a one-count complaint in Florida state court against Target, alleging that Target violated the Florida Whistleblower Act ("FWA"), Florida Statutes §448.102, *et seq*.   Target removed this case to federal court on May 3, 2017 [D.E. 1] and, shortly thereafter, the parties jointly requested a settlement conference.   [D.E. 4].   The Court granted the parties' request and the parties participated in a settlement conference before the undersigned on June 19, 2017. [D.E. 8].

In attempting to reach a favorable settlement, Target sought terms that included: (1) the dismissal of the lawsuit with prejudice, (2) general and specific releases, (3) a covenant not to sue, (4) a non-admission of liability, (5) confidentiality, (6) a non-disparagement clause, and (7) a no-rehire provision.   To facilitate settlement discussions, Target's counsel – Alexandre Drummond ("Mr. Drummond") – relayed several offers to Plaintiff's counsel, Chad Levy ("Mr. Levy"), and Mr. Levy returned with either a counter-offer or additional questions.

Around 3:30 pm, Mr. Drummond relayed to Mr. Levy his final settlement offer.   Mr. Levy left with the offer to discuss with his client.   Mr. Levy subsequently informed Mr. Drummond that Plaintiff accepted Target's offer.   Mr. Drummond and Mr. Levy then notified the Court that the parties had reached a settlement.   The Court entered a minute order stating that the case had settled and that "[t]he parties [c]onsent to the jurisdiction of Magistrate Judge Edwin G. Torres

2

for settlement approval."  [D.E. 11].   The parties also executed a notice of consent to jurisdiction.   After the settlement conference, Mr. Drummond shook hands with Plaintiff and left the courthouse.

Shortly thereafter, a dispute arose on whether a settlement had been reached. Plaintiff argued that, while he and his parents attended the settlement conference, none of them authorized Mr. Levy to settle the case or to agree to the proposed terms.   Plaintiff suggested that the settlement could not be enforced because Mr. Levy did not have clear and unequivocal authority to settle this case and that his mere employment was insufficient without Plaintiff's consent.   Plaintiff stated that, at the end of the settlement conference, Mr. Levy told him that he would send him a settlement proposal but failed to mention that a final settlement had already been agreed to between the parties.   Subsequent to the settlement conference, Plaintiff terminated Mr. Levy as his attorney and retained new counsel.   On July 13, 2017, William Amlong ("Mr. Amlong") entered a notice of appearance on Plaintiff's behalf and filed a notice of dismissal without prejudice.   [D.E. 13].   Mr. Amlong communicated with Target that his client did not consider the settlement agreement to be enforceable and that Plaintiff intended to re-file this case in state court.

On November 28, 2017, the Court held an evidentiary hearing to assess the credibility of the witnesses and to determine whether Mr. Levy had the authority to settle this case.   Mr. Levy testified credibly at the hearing that, before the settlement conference, he explained to Plaintiff and his parents that the purpose of

3

attending the hearing was to reach a resolution with Target and to resolve the case.[1] Specifically, on June 16, 2017, Mr. Levy explained – on a phone call with Plaintiff and his parents – the possibility of settling with Target along with potential amounts that could be proposed at the upcoming settlement conference.   On the day of the settlement conference, Mr. Levy testified that he and Target's counsel repeatedly traded offers on how to resolve Plaintiff's claims.   After several rounds of negotiations, Target tendered an offer of $12,500.   Mr. Levy communicated Target's offer in the hallway outside the courtroom and discussed with Plaintiff and his parents the nonmonetary terms associated with the settlement.

After discussing Target's settlement offer with his client, Mr. Levy testified that he (1) received Plaintiff's approval, (2) returned to the courtroom, (3) communicated to Target that a deal was reached, and (4) consented to the undersigned's jurisdiction.   Later that evening, Mr. Levy received an email from Target's attorney confirming that the case was settled for $12,500 and that Target would circulate a draft agreement memorializing the parties' terms.   Mr. Levy responded to Target on June 20, 2017, confirming the parties' agreement and noting that the payment for Mr. Levy's fees would be $5,431.   On June 26, 2017, Target

---

[1]     An evidentiary hearing was required because "[w]here material facts concerning the *existence* or *terms* of an agreement to settle are in dispute," *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987) (emphasis in original), or "where there is a material dispute about the authority of an attorney to enter a settlement agreement on behalf of his client, the parties must be allowed an evidentiary hearing." *Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994) (citing *Millner v. Norfolk & W.R. Co.* 643 F.2d 1005 (4th Cir. 1981)).

sent an initial draft of the settlement agreement.   Mr. Levy requested only that Target modify the settlement payment to split Plaintiff's payment into both W2 wages and a 1099 payment.   Target accepted Mr. Levy's proposal the same day and sent a revised agreement on July 6, 2017.

Two days later, Plaintiff's father, Christopher Thompson ("Mr. Thompson"), sent an email discharging Mr. Levy as Plaintiff's attorney.   Mr. Levy responded on July 10, 2017, explaining that he was shocked that he was being terminated because the parties had reached a settlement.   Mr. Levy testified that he had not heard from Plaintiff after sending the proposed settlement agreement and urged Mr. Thompson to reconsider his decision to terminate him to no avail.   In sum, Mr. Levy testified that he had the authority to settle this case because (1) Plaintiff and his parents were well aware of the purpose of the settlement conference and (2) Plaintiff approved an agreement of $12,500 after Mr. Levy explained all of the material terms of the agreement.

At the evidentiary hearing, Mr. Thompson, Laila Thompson ("Mrs. Thompson"), and Plaintiff (collectively, the "Thompsons") testified in support of their opposition to Target's motion.   They explained that none of them ever gave Mr. Levy the authority to settle this case and that they first learned of the settlement when Mr. Levy's office emailed Plaintiff a copy one week after the settlement conference.   When questioned on whether the Thompsons understood the purpose of the settlement conference, they all agreed that the purpose was to potentially

reach a resolution of Plaintiff's claims with Target.[2]   For example, Mrs. Thompson testified that, when Mr. Levy was trading settlement offers with Target, her son repeatedly asked whether his job would be part of those terms.[3]   When Target proffered a settlement amount of only $1,000, Mr. Thompson testified that he was upset with such a low number to which Mr. Levy explained that a settlement was important because otherwise the case might be dismissed.   After negotiations continued, Target tendered an offer of $12,500.   At the conclusion of the settlement conference, Target's counsel approached the Thompsons and shook their hands before everyone departed the courthouse.[4]

On December 23, 2017, the Court granted Target's motion to enforce the agreement because Mr. Levy had clear and unequivocal authority to settle this action and no material terms remained to be negotiated.   [D.E. 23].   Plaintiff then filed an appeal to the Eleventh Circuit on October 24, 2018 [D.E. 24], but the Court dismissed that appeal on January 25, 2019 for failure to litigate.   [D.E. 33].   Six

---

[2]     The Thompsons' testimony was consistent in that Mr. Levy allegedly stated that the settlement conference was mandatory and that sanctions could have been imposed if they did not attend.

[3]     Aside from the monetary relief sought, Plaintiff testified that the return of his job was the most important component of any settlement.

[4]     Unlike the rest of the Thompsons, Mr. Thompson testified that he recalls Target's attorney shaking his hand and expressing gratitude that the parties *resolved* the case.   Mrs. Thompson specifically stated that she never heard Target's counsel mention the word "resolved," but shook his hand as a matter of courtesy.

months later on August 1, 2019, the Court entered an Administrative Order that closed this case and, approximately one year later, Plaintiff filed a motion to remand.

## II.    ANALYSIS

Plaintiff's motion seeks to reopen this case, vacate a prior order enforcing the parties' settlement agreement, remand this action to Florida state court, and award fees and costs.   Plaintiff argues that all of this relief should be granted because there has never been federal jurisdiction in this case.   While the parties are diverse, Plaintiff states that there is no way that this case ever presented an amount in controversy exceeding $75,000.   In fact, Plaintiff claims that Mr. Levy knew that this case belonged in state court and that he would have sought remand if no settlement had been reached.   Plaintiff equates the removal of this case to a sham because, before Plaintiff hired Mr. Amlong, both attorneys in this action devised a plan to "trick [Plaintiff"] into a federal courthouse in hopes that a judge might pressure him to settle the case[.]"   [D.E. 35 at 16].

Plaintiff also claims that the allegations in his complaint failed to state a claim and that he had no legally protected interest to confer standing.   Plaintiff views this as a dispositive issue because, without standing, there was never a case or controversy for jurisdiction to exist.   And without jurisdiction, Plaintiff reasons that the approval of the parties' settlement agreement is void as a matter of law. Plaintiff further argues that he should be entitled to fees because "[t]wo seasoned employment lawyers got together and faked jurisdiction [so] that they could lure a

teenager and his parents into a federal courthouse where . . . a federal judge had ordered them to attend a settlement conference." *Id.* at 17.   Plaintiff contends that this case represents an abuse of the removal process, that these tactics cannot be tolerated, and that fees should be awarded alongside a remand of this action to Florida state court.

### A.   *Principles of Federal Jurisdiction*

We begin with the familiar premise that federal courts are courts of limited jurisdiction. *See Burns v. Windsor Ins. Co.,* 31 F.3d 1092 (11th Cir. 1994).   They are empowered to hear only those cases within the judicial power of the United States as defined under Article III of the Constitution, and which have been entrusted to them by a jurisdictional grant authorized by Congress.   *See University of South Ala. v. American Tobacco Co.,* 168 F.3d 405, 409 (11th Cir. 1999).   A district court which exercises jurisdiction it does not have "unconstitutionality invades the powers reserved to states to determine controversies in their own courts" and "offends fundamental principles of separation of powers."   *Id.* at 410. The subject matter jurisdiction of a federal court is therefore constitutional and statutory in nature, and it cannot be waived or otherwise conferred upon the court by the parties.   *Id.*   That is, even if no party objects to a court's subject matter jurisdiction, the court should inquire into its jurisdiction *sua sponte* whenever it may be lacking.   *Id.*

8

**B.**     *Relief under 28 U.S.C. § 1447(c)*

Having set forth the relevant legal principles underlying federal jurisdiction, Plaintiff first seeks to remand this case pursuant to 28 U.S.C. § 1447(c).  This statute provides, in part, that "[i]f at any time *before final judgment* it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c) (emphasis added).   Plaintiff seeks relief under 1447(c) because no final judgment has ever been issued in this case.

Plaintiff's argument is misguided because Rule 58 provides that "[e]very judgment and amended judgment must be set out in a separate document" except for five specific types of motions that do not apply here.   Fed. R. Civ. P. 58(a).   The rule further states that, if a district court is required to set out a judgment or order in a separate document but fails to do so, the judgment or order is considered "entered" when it is set out in a separate document or after 150 days have run from the entry in the civil docket – whichever is earliest.  *See* Fed. R. Civ. P. 58(c); *see also Dyer v. Wal-Mart Stores, Inc.*, 535 F. App'x 839, 844 (11th Cir. 2013) ("If a district court was required to set out a judgment or order in a separate document and did not do so, the rules provide that the judgment or order is considered entered after 150 days have run from the entry of a judgment or order in the civil docket.") (citing Fed. R. App. P. 4(a)(7)(A)(ii); Fed. R. Civ. P. 58(c)(2)(B)).

The purpose of Rule 58 is "to ensure that appeal time does not linger on indefinitely."  Fed. R. Civ. P. 58, advisory committee note to 2002 amendment.

And while it is, of course, preferable that judgment be entered separately, the 150-day clause applies where the "court and clerk fail to comply with this simple requirement[.]" *Id.*; *see also Baez v. Comm'r of Soc. Sec.*, 760 F. App'x 851, 855 (11th Cir. 2019) (concluding that "final judgment was entered on August 18, 2016, 150 days from when the district court's March 21, 2016, order terminating the case appeared on the docket."); Fed. R. App. P. 4, advisory committee note to 2002 amendment ("This cap will ensure that parties will not be given forever to appeal (or to bring a postjudgment motion) when a court fails to set forth a judgment or order on a separate document in violation of Fed. R. Civ. P. 58(a)(1).").

Based on these principles, judgment was "entered" in this case 150 days after the Court enforced the parties' settlement agreement on December 21, 2017.   [D.E. 23].[5]   Plaintiff suggests that he should be exempt from this rule because – due to an administrative error with the clerk's office where the sealed order was not timely submitted to the parties – Plaintiff never received notice of the court order until the Court's clerk emailed a copy of the order to the parties on September 25, 2018.

---

[5]      In response to the Eleventh Circuit's jurisdictional question, Plaintiff admitted that his prior appeal was untimely:

> The answer is that it was not timely.  The order was entered under seal and was not transmitted to counsel, as required by Federal Rule of Civil Procedure 77(d).  The magistrate judge's law clerk e-mailed copies of the order to counsel September 25, 2018.  By that time, Federal Rule of Appellate's 180-day window within which to move to reopen the time within which to file an appeal had long passed.

[D.E. 46-2].

But, even if Rule 58 included this exception to the 150-day timeline for judgment to be "entered", Plaintiff's argument is still unpersuasive because another 150 days passed without Plaintiff ever challenging the Court's jurisdiction or the entry of final judgment.   While Plaintiff filed a notice of appeal with the Eleventh Circuit on October 24, 2018, the Court dismissed that appeal on January 25, 2019 for want of prosecution.   [D.E. 33].   And Plaintiff never filed anything further with this Court or the Eleventh Circuit to reopen the time to appeal, to request the entry of judgment, or to seek relief under Rule 60 until August 6, 2020 [D.E. 35] – which is more than one year after the Court entered an Administrative Order that closed this case.   [D.E. 34].

This means that, even if we extended the time that Rule 58 would have automatically entered final judgment due to a lack of notice, the result remains the same because of the extraordinary amount of time that has passed since the Court enforced the parties' settlement agreement.   That is, whether final judgment was "entered" on May 21, 2018 (150 days after the Court granted Target's motion on December 21, 2017), February 22, 2019 (150 days after the Court's clerk emailed the parties a copy of the court order on September 25, 2018[6]), or December 29, 2019 (150 days after the Court administratively closed this case), Plaintiff's motion for relief under 28 U.S.C. § 1447 is still untimely.   *See* 28 U.S.C. § 1447 ("If at any time

---

[6]    This, of course, presumes that there is a notice exception to the entry of judgment in Rule 58.   While no such exception exists in the language of the rule, we include this date to show how much time has passed since Plaintiff challenged the enforcement of the parties' settlement agreement.

11

before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). Thus, with respect to this relief, Plaintiff's motion is **DENIED**.

### C.   _Relief under Fed. R. Civ. P. 60(b)(4)_

Next, Plaintiff seeks relief under Fed. R. Civ. 60(b)(4) because, under this rule, a court may relieve a party from a final judgment or order based on a finding that the judgment is void. _See_ Fed. R. Civ. P. 60(b)(4). A judgment is generally void under Rule 60(b)(4) "if it was rendered without jurisdiction of the subject matter or the parties or in a manner inconsistent with due process of law." _Oakes v. Horizon Fin., S.A._, 259 F.3d 1315, 1319 (11th Cir. 2001) (citing _United States v. Boch Oldsmobile, Inc.,_ 909 F.2d 657, 661–62 (1st Cir. 1990) (explaining that the concept of void judgments must be narrowly construed to comport with the interests of finality)). A judgment is also void for Rule 60(b)(4) purposes if the rendering court was powerless to enter it. _See Gschwind v. Cessna Aircraft Co.,_ 232 F.3d 1342, 1346 (10th Cir. 2000).

Generally, Rule 60(b) motions "must be made within a reasonable time." Fed. R. Civ. P. 60(c)(1). What constitutes a "reasonable time" depends upon the circumstances and facts of each case, including "whether the parties have been prejudiced by the delay and whether a good reason has been presented for failing to take action sooner." _BUC Int'l Corp. v. Int'l Yacht Council Ltd.,_ 517 F.3d 1271, 1275 (11th Cir. 2008) (quotation marks omitted). But, the time for filing a Rule

60(b)(4) motion "is not constrained by reasonableness." *Hertz Corp. v. Alamo Rent–A–Car, Inc.,* 16 F.3d 1126, 1130 (11th Cir. 1994). This does not mean, however, that a district court errs in denying a Rule 60(b)(4) motion where the party seeking relief "knowingly sat on his rights," and "does not give an acceptable reason for this delay." *Stansell v. Revolutionary Armed Forces of Colombia,* 771 F.3d 713, 736–38 (11th Cir. 2014) (involving a Rule 60(b)(4) movant who claimed he had no notice of garnishment proceedings but did not explain why he waited nine months after becoming aware of the judgment to file his motion); *see also United Student Aid Funds, Inc. v. Espinosa,* 559 U.S. 260, 275 (2010) ("Rule 60(b)(4) does not provide a license for litigants to sleep on their rights."). "Rule 60(b)(4) strikes a balance between the need for finality of judgments and the importance of ensuring that litigants have a full and fair opportunity to litigate a dispute." *Espinosa,* 559 U.S. at 276.

Here, Plaintiff has "sat on his rights" because, after he abandoned his appeal to the Eleventh Circuit and the Court dismissed it on January 25, 2019 [D.E. 33], Plaintiff did nothing further in this case until he filed the pending motion to remand on August 6, 2020. [D.E. 35]. This is a gap of approximately twenty (20) months (and almost two years if measured from the date Plaintiff received a copy of the court order enforcing the settlement agreement) and Plaintiff fails to offer any reason as to why it took him so long to seek relief under Rule 60 especially since he has used the same lawyer, Mr. Amlong, since July 2017. Given that the Eleventh

13

Circuit has found that a much shorter period of approximately five months is enough to deny a Rule 60(b)(4) motion and Plaintiff's delay in this action is far longer with no apparent reason for the Court to consider any extenuating circumstances, Plaintiff motion would ordinarily be untimely under Rule 60(b)(4). *See Stansell*, 771 F.3d at 737 ("Herrera still fails to provide us with grounds for considering the motion because he waited an additional five months after his attorney was licensed to file anything with the district court.   Herrera does not give an acceptable reason for this delay.   Therefore, the district court did not err in denying the Rule 60(b)(4) motion.").

However, considering Plaintiff's challenge is based on the Court's subject matter jurisdiction (as opposed to personal jurisdiction) and the Eleventh Circuit has "concluded that a Rule 60(b)(4) motion raising a jurisdictional defect in the judgment is not subject to Rule 60's reasonable time limitation," it would be improper to deny Plaintiff's motion based solely on untimeliness.   *Wattleton v. United States*, 384 F. App'x 907, 908 (11th Cir. 2010); *see also In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003) ("One important limitation is that objections to personal jurisdiction (unlike subject matter jurisdiction) are generally waivable.") (citing *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 705 (1982)); *Hertz Corp.*, 16 F.3d at 113-31 ("The Supreme Court has stated, regarding a federal court's acquisition of subject-matter jurisdiction, that . . . 'a party does not waive the requirement by

14

failing to challenge jurisdiction early in the proceedings.'") (quoting *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702 (1982)). We will therefore consider Plaintiff's motion on the merits to determine if the judgment against him is void under Rule 60(b)(4).

In seeking relief under this provision, "it is well-settled that a mere error in the exercise of jurisdiction does not support relief under Rule 60(b)(4)." *Oakes v. Horizon Fin., S.A.*, 259 F.3d 1315, 1319–20 (11th Cir. 2001) (citing *Chambers v. Armontrout,* 16 F.3d 257, 260 (8th Cir. 1994) (rejecting district court's failure to comply with an appellate mandate as a sufficient basis for rendering order void under Rule 60(b)(4); *United States v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 661-62 (1st Cir. 1990) (explaining that relief under Rule 60(b)(4) requires a total want of jurisdiction in contrast to an error in the exercise of that jurisdiction); *Gulf Coast Building & Supply Co. v. International Brotherhood of Elec. Workers,* 460 F.2d 105, 108 (5th Cir. 1972) (noting that an error in law is insufficient to render a judgment void  under Rule 60(b)(4)).   Indeed, "[f]ederal courts considering Rule 60(b)(4) motions that assert a judgment is void because of jurisdictional defect generally have reserved relief for the *exceptional case* in which the court that rendered judgment lacked even an 'arguable basis' for jurisdiction." *Espinosa,* 559 U.S. at 271 (emphasis added).

In light of this more difficult standard after final judgment has been entered, Plaintiff has failed to show that the Court lacked an "arguable basis" for jurisdiction

15

and that the amount in controversy fell below $75,000 at the time of removal.   *Id*. To recap, Plaintiff's claim was based on the FWA and he sought actual damages, compensatory damages, and attorneys' fees.   Plaintiff's employment with Target ended on January 18, 2017 and, at that time, he was earning $10 per hour and worked approximately 39 hours per week.   His estimated yearly income would have been $20,000 and this represents a reasonable amount that he would have earned in lost wages had this case proceeded to trial one year after he filed it.   *See* Fla. Stat. Ann. § 448.103 (allowing for the recovery of "[c]ompensation for lost wages, benefits, and other remuneration."); *see also Moreland v. Suntrust Bank*, 981 F. Supp. 2d 1210, 1213 (M.D. Fla. 2013) (finding that "[a] successful plaintiff is entitled to future lost wages," under the FWA).   And in wrongful termination suits, "a successful plaintiff receives back pay from the date of his or her termination to the date of trial."   *Munoz v. Oceanside Resorts, Inc.,* 223 F.3d 1340, 1347 (11th Cir. 2000); *see also Fusco v. Victoria's Secret Stores, LLC*, 806 F. Supp. 2d 1240, 1244 (M.D. Fla. 2011) ("[B]ack pay for purposes of the amount in controversy requirement should be calculated to the date of trial.").

Plaintiff also sought "all other sums of money, medical benefits, and other employment benefits," and "reasonable attorney's fees, expert fees, and costs[.]" [D.E. 1-2].   While these costs were, of course, uncertain at the time of removal, a fee and cost award by itself could have been substantial to the extent this case proceeded to trial.   *See Bush v. Raytheon Co.*, 2009 WL 5128040, at *1 (M.D. Fla.

16

Dec. 21, 2009) ("Florida Statute § 448.104 permits a court to award reasonable attorneys' fees to the prevailing party under the Whistleblower Act."); Fla. Stat. §448.104 (providing that a court "may award reasonable attorney's fees, court costs, and expenses to the prevailing party."). And "[w]hen a statute authorizes the recovery of attorney's fees, a reasonable amount of those fees is included in the amount in controversy." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1265 (11th Cir. 2000).

But, even putting aside fees and costs, this total omits Plaintiff's demand for unspecified compensatory and consequential damages, which the FWA allows without limitation to economic damages. *See Aery v. Wallace Lincoln-Mercury, LLC*, 118 So. 3d 904, 913 (Fla. 4th DCA 2013) ("The plain and unambiguous language of section 448.103(2)(e) 'authorizes the court to award compensatory damages' without limitation to mere 'economic damages,' since any other interpretation 'would render the catch-all provision of subsection (e) meaningless.'") (citing *Wood v. Cellco P'ship,* 2007 WL 917300, at *5 (M.D. Fla. Mar. 23, 2007)). Therefore, when all of these damages are totaled together, the Court not only has an "arguable basis" for jurisdiction but also a compelling one (assuming of course his claim had merit) because Plaintiff could have recovered much more than $75,000 if he had prevailed.

Notwithstanding these potential damages, Plaintiff suggests that this case lacked jurisdiction because he failed to state a claim in his original complaint and it

17

should have been subjected to a motion to dismiss. This is a feeble argument, in large part, because Plaintiff fails to reference any authority that a case is not removable because of a failure to state a claim. Plaintiff then states that he never had any standing to file a whistle-blower's lawsuit, but the reasons provided in support of this position are unclear and, like the last argument, fail to reference a single case in support of this contention. [D.E. 35 at 1 ("[P]laintiff's lack of standing to bring a whistle-blower's suit when what he had been opposing while employed at Target was not any violation of the Child Labor Law, but rather Target's insistence on providing him protections included in that law even though the statute said it did not need to do so: plaintiff's organic inability to state a whistle-blower's claim upon which relief could be granted meant that his claim was not a "case or controversy" as required by Article III of the Constitution")]. Because Plaintiff failed to present these arguments with any clarity and to support them with relevant authority, there is no need to go any further in our consideration of them.

In sum, Plaintiff's motion lacks merit in many respects because, when a dispute arose as to whether a settlement had been reached in this case and the Court enforced the parties' settlement agreement, Plaintiff filed an appeal with the Eleventh Circuit and then abandoned it when the Court dismissed it in January 2019. The case was final at that point.

Plaintiff then waited until August 2020 to file a motion to remand this case for lack of jurisdiction, and gave no reason as to why any relief should be provided when

the Court administratively closed this action in August 2019.   Making matters worse, almost all of Plaintiff's arguments are conclusory, confusing, or otherwise unsupported.   And Plaintiff repeatedly claims that the removal of this action was a sham, yet fails to rely on any evidence to support these allegations while, at the same time, waiting almost two years after the Court's clerk emailed the parties to give them notice of the order enforcing the parties' settlement agreement.   For these reasons, Plaintiff's motion to remand this case to Florida state court and for attorney's fees is **DENIED**.   The case remains closed.

### III.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's motion to remand this case to Florida state court and for attorney's fees is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 16th day of September, 2020.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge